# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 08 CV 5589 |
| | ) | |
| PETER PALIVOS | ) | (re: No. 00 CR 1065-5) |
| | ) | |
| Defendant. | ) | |

## DECISION AND ORDER

Peter Palivos has filed a motion under 28 U.S.C. § 2255 ("2255 motion") attacking his judgment of conviction of conspiracy to obstruct justice entered in this court on November 2, 2005, case number 00 CR 1065-5. The judgment was affirmed on April 10, 2007. *United States* v. *Palivos*, 486 F.3d 250 (7th Cir.).[1] This document concerns certain motions threshold to disposition of the 2255 motion, namely, Palivos's motion to disqualify Assistant United States Attorneys Marsha McClellan and William Hogan from representing the United States in defense of the motion (Dkt. No. 16), Palivos's motion for discovery (Dkt No. 18), Palivos's motion to amend (Dkt No. 38), the United States' motion for entry of an order finding the attorney-client privilege waived or, in the alternative, an order striking Palivos's 2255 motion (Dkt. No. 32), and Palivos's renewed motion to disqualify and for leave to take discovery (Dkt. No. 34).

### A. Palivos's Motion to Disqualify

One of the claims Palivos makes in his 2255 motion is based on proffered evidence that AUSA Hogan knowingly withheld exculpatory information from him–evidence that would have

---

[1] The judgment of conviction was reversed for co-defendant Louis Marin.

1

proved his actual innocence–and knowingly suborned perjury at Palivos's trial. To show lack of procedural default (*i.e.*, that the issues could not have been raised at trial, post-trial or on direct appeal), Palivos represents that the information was "recently uncovered" during an investigation launched by the United States House of Representatives, Committee on the Judiciary, into the United States Attorney's misconduct during the prosecution of Palivos. Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 ( "Palivos 2255 Memorandum") at 2. Because of these allegations, Palivos contends that Hogan and McClellan, who was co-counsel during the prosecution, should be disqualified from representing the United States in defense of the § 2255 attack because Hogan would be forced to respond to the question whether he failed to disclose exonerating evidence, placing him in a position in conflict with the interest of the government he represents.

With exceptions not relevant here, "[a] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." ABA Model Rules of Professional Conduct, Rule 1.7(a)(2); *see* Local Rules of Professional Conduct, LR 83.51.7(b). Magistrate Judge Schenkier concisely summarized governing law in *Commonwealth Insurance Co.* v. *Stone Container Corp.*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001):

> . . . "The maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration . . . that a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *International Business Machines Corp.* v. *Levin*, 579 F.2d 271, 283 (3d Cir. 1978). At the same time, we recognize that motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman* v. *Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). For this reason, "disqualification is 'a drastic

measure which courts should hesitate to impose except when absolutely necessary.'" *Owen* v. *Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (quoting *Schiessle* v. *Stephens*, 717 F.2d 417-19 (7th Cir. 1983)). The moving party "bears a heavy burden of proving facts required for disqualification." *Evans* v. *Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983) (cited with approval in *Guillen* v. *City of Chicago*, 956 F.Supp. 1416, 1421 (N.D. Ill. 1997)).

Under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the government must disclose favorable evidence to the accused where evidence is material to guilt or punishment. *Giglio* v. *United States*, 405 U.S. 150 (1972), confirmed that the rule applies to impeaching evidence as well evidence of the elements of the crime. *See id.* at 154, 92 S.Ct. at 766 ("When the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within [*Brady*]."). In *Giglio*, the prosecution had failed to produce evidence that the government had promised the critical witness he would not be prosecuted if he agreed to testify against the defendant and, to the contrary, had attested that such a promise had not been made. Because the evidence was material to the witness's credibility, the Court held the defendant's right to due process violated. Evidence is material if it has a reasonable likelihood of affecting the judgment of the jury. *Giglio*, 405 U.S. 150, 154, 766, 92 S.Ct. at 766, 31 L. Ed. 2d 104. "Suppressed evidence that could have been used to impeach a government witness can affect the outcome if it is not cumulative of other impeachment offered at trial." *United States* v *Wilson*, 481 F.3d 475, 480 (7th Cir. 2007). Undisclosed impeachment evidence would not produce a different result if the testimony of the witness against whom it is offered was strongly corroborated by other evidence. *See Conley,* 415 F.3d at 190-91. Whether omitted by design or neglect, the prosecutor bears the responsibility for non-production of such evidence. *Wilson*, 481 F. 3d at 480. In applying these principles, this court has endeavored to determine whether Palivos has demonstrated at least a colorable

3

evidentiary basis for the accusations against Hogan that he failed to turn over material evidence to Palivos.

An important piece of evidence against Palivos came from cooperating witness Nicholas Black, a real estate lawyer who had represented an entity called JACPG, Inc., in the transaction the jury determined to be fraudulent. (The government offered evidence that Palivos was the "P" in JACPG). Black, who pleaded guilty pursuant to a plea agreement, testified that Palivos had participated in the creation of notes for a file that would appear to have been written in 1996 at the time of the transaction but were actually written by Black after the defendants learned they were being investigated. According to Black's grand jury testimony, he created the notes on "approximately November 14, 2000, or November 15, 2000." Exh. 7 to Palivos 2255 Memorandum at 43. Black delivered the file containing fabricated notes to the Inspector General of the Small Business Administration on November 15, 2000. Dean Kalamatianos, an attorney who worked with Black, testified that Black later told him that Palivos had asked him to prepare backdated notes. A government agent testified that Black had admitted to him that he fabricated the notes. The government also presented the testimony of a forensics expert who testified based on her examination of the documents that the notes had not been written contemporaneously with the transaction.

Palivos contends that a House Judiciary Committee investigation has demonstrated Hogan's misconduct, specifically, that the government possessed evidence conclusively proving that these notes were created prior to November 7, 2000. He states that co-defendant Peter G. Bouzanis (a fugitive who lives in Greece) and his Greek attorney had copies of the two notes on November 7, 2000, a week before Black said they were written. Palivos cites as proof materials

that reached the Committee indirectly from Palivos,[2] which he identifies as "an affidavit from a Greek attorney attesting that he and his client [Bouzanis] . . . had these notes in their file before November 14 or 15 and that he (the attorney) mailed that file to Mr. Hogan[,]" Motion to Disqualify at ¶ 9, prior to the trial in this case.[3]

As it turns out, the record before this court contains no affidavit of Bouzanis's attorney. It does contain a cover letter dated September 8, 2003 from Sotirios Bregiannos, who states that he is an attorney in Greece representing Bouzanis. Exh 13 to Palivos 2255 Memorandum. The letter is directed to Adam Charnes, Deputy Assistant Attorney General, in Washington, D.C., apparently conveying unspecified materials related to the case. One of the eight pages of documents in the same exhibit (although there is no authentication that these were the contents of the package, the court is only assuming so) is an affidavit of Bouzanis dated September 8, 2003. Two pages appear to be Black's backdated notes. The lawyer also states that "the attorney handling the case," presumably Hogan, refused to accept the enclosed documents unless Bouzanis agreed to cooperate. The referenced shipping documents indicate that a package was delivered to a shipper in Greece on September 9, 2003, and one of the documents bears the address of the United States Attorney in Chicago. The record contains no letter of transmittal at

---

[2]See January 5, 2005 letter from Chicago area congressmen to Department of Justice concerning propriety of Palivos's prosecution, Exh. 8 to Palivos 2255 Memorandum; October 16, 2007 letter from Vicky Palivos, Palivos's wife, to the Chairman of the House Judiciary Committee, Rep. John Conyers, seeking his assistance in obtaining review of Palivos's conviction, Exh. C to Government's Response to Peter Palivos' Petition to Vacate, Set Aside or Correct His Sentence Pursuant to 28 U.S.C. § 2255; email dated September 27, 2008, reflecting a meeting apparently between a House staffer and Vicky Palivos in which her request for an inquiry was discussed, Exh. 8 to Palivos's Combined Reply in Support of Motion to Disqualify and Motion for Discovery.

[3]Trial began on September 16, 2003 and ended October 10, 2003.

any time to Hogan or McClellan or the United States Attorney in this district indicating the contents of such a mailing, if there was one. Confirmation of delivery is not apparent as far as the court can discern. Exh. 11 to Palivos 2255 Memorandum. Bouzanis's affidavit states that Black gave him "the file" consisting of 73 pages on or about November 7, 2000, and he took it to Greece on November 14, 2000. His lawyer shipped this same 73-page file to Hogan on September 9, 2003. Exh. 13 to Palivos 2255 Memorandum..

In an affidavit dated January 21, 2005, which appears to have been submitted to the House Judiciary Committee and passed on to Attorney General Michael Mukasey on January 16, 2008, Bouzanis states that Black gave him a copy of the file on November 7, 2000, and that when he shipped the 73-page file to Hogan, the notes Black admitted to fabricating were within. *Id.*, Exh. 10 at fourth page, ¶ 10. If the notes were created after Black found the file on November 3 and before he gave it Bouzanis on November 7, Palivos reasons, Black was lying about two meetings with Palivos between November 3 and the date he said he wrote the notes, November 14 or 15. Bouzanis signed another affidavit dated May 5, 2005 stating he had the notes before November 14, 2000. Exh. 14 to Palivos 2255 Memorandum.

Palivos's presentation has serious defects. First, there is no corroboration of anything Bouzanis has to say. There is no independent evidence that Bouzanis met with Black on November 7, 2000. Moreover, Bouzanis's Greek lawyer has not attested that he sent anything to Hogan, much less that he sent a copy of Black's file containing the disputed notes. The purported proof of shipping is unauthenticated and opaque as to the date of delivery or item(s) delivered. Indeed, the letter from Bouzanis's lawyer dated September 8, 2003, implied to be the cover letter for the package, is addressed to Mr. Charnes. The lawyer's letter merely contains a broad denial

6

of Bouzanis's (not Palivos's) guilt, a conclusion resting on no admissible foundation. Palivos in reply is shocked that the government did not turn over during trial a memorandum (Exh. 1 to Gov't Response to Motion for Discovery) reflecting a telephone conversation between Hogan and Bouzanis on September 26, 2003 (during trial), but he does not specify why a memorandum that does not mention Palivos and merely professes the innocence of Bouzanis who would not become a witness at trial, was material to his defense. Without credible evidence that Hogan had information that Black gave the notes to Bouzanis by November 7, the accusation of prosecutorial misconduct fails.

Moreover, this court finds no particular reason to exalt Palivos's presentation over what it is because the House Judiciary Committee launched an investigation about prosecutorial misconduct. According to documents Palivos submits, two subcommittees of the House Committee on the Judiciary held a joint hearing on allegations of selective prosecution, and "the erosion of public confidence in our federal judicial system." Exh. 9 to Palivos 2255 Memorandum. These documents reflect that the committees were concerned about whether the Department of Justice had become "a political arm of the Bush Administration." Palivos is one among a number prosecutions concerning which the committee had received reports of prosecutions based on a defendant's Democratic political affiliation. The Palivos letters were entered into the record of the hearing. *Id*. at 2 of 2. At the Committee's request, the Department of Justice did review the matter and closed the file as not warranting further action. Exhs. B and C to Government's Response to Peter Palivos' Petition to Vacate, Set Aside or Correct His Sentence Pursuant to 28 U.S.C. § 2255. Palivos is not even mentioned in the January 13, 2009

7

Majority Staff Report to Chairman Conyers.[4]

In short, Palivos has not met his heavy burden of proving facts requiring disqualification of Hogan and McClellan. He has failed to demonstrate any credible basis for his serious accusations of prosecutorial misconduct against these attorneys. The motion is denied.

**B. Palivos's Motion for Discovery**

Palivos seeks discovery in support of his 2255 motion. In 26 pages of text, Palivos outlines his professed need to depose Hogan and McClellan, as well as a former AUSA who had been involved in the JACPG, Inc. investigation, the SBA Inspector General's Special Agent Thomas Heinzer, and an AUSA who represented the government in a False Claims Act lawsuit against Palivos. He seeks production of documents from the government, its trial witnesses, a bank involved in the loan transaction, accountants, lawyers, the Internal Revenue Service, Federal Deposit Insurance Corporation, the Illinois Department of Revenue, and 92 requests to admit to be served on Charter One Bank, where Nicholas Black conducted some of his financial dealings. The request is breathtaking in scope and fiercely opposed by the government.

Under Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the court may allow discovery for good cause shown under the federal civil or criminal rules of procedure. In civil discovery, which is broader than criminal discovery, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). At the same time, courts are to limit discovery where "the burden of the proposed discovery outweighs its likely benefit, considering the needs of the case . . . and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(iii). In a

---

[4] http://judiciary.house.gov/hearings/printers/110th/IPres090113.pdf.

habeas case, good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]" *Bracy* v. *Gramley,* 520 U.S. 899, 908-909, 117 S. Ct. 1793, 1799 (1997), quoting *Harris* v. *Nelson*, 394 U.S. 286, 300, 89 S. Ct. 1082, 1091 (1969).

To succeed on this motion, then, Palivos must show that if the facts are fully developed he may be able to demonstrate that he was sentenced in violation of the Constitution or laws of the United States. Palivos hopes to uncover facts relating to the following principal accusations:

1. The government withheld exculpatory evidence that Black was lying, that the proffer Bouzanis gave to Agent Heinzer on September 6-7, 2001 was false (on the basis that Bouzanis refused to sign an affidavit attesting to the proffer or give a deposition because the proffer statement "contained falsities"), and that Black tried to recant his testimony prior to trial but was threatened with prosecution for perjury to deter him from doing so.

2. The government suborned perjury from Black to cover up the existence of documents establishing his innocence in that Heinzer was instructed to testify that Bouzanis left the country in October when it knew he had actually left on November 14. Had he testified that Bouzanis left on November 14, in addition to disclosing the Bouzanis-Black meeting of November 7, Palivos would have understood that Black was lying when he said he created the notes on the 14th or 15th. AUSA Eric Wilson also participated in the coverup, Palivos supposes, by instructing Bouzanis not to tell anyone that he had given a false proffer to the United States Attorney during September 2001. Palivos also thinks "on information and belief," that McClellan instructed AUSA Pierre Talbert, who filed a False Claims Act law suit against Palivos, not to disclose information about the notes in discovery of that case. The government

9

also suborned perjury from Black when he testified that he met with George Palivos between November 3 and November 13 when it knew that George Palivos had been out of the country during that period.[5]

3. Palivos' trial counsel, Thomas Breen, failed to investigate and call numerous witness who would have thoroughly impeached Black and provided a motive for the prosecution of Palivos, thereby establishing his innocence. Examples include that counsel did not call Black's secretary, who would have impeached Black's testimony about his notes and his old valise; employees of Palivos's law firm, and a building security guard, who could have testified that they did not see Black at the Palivoses' law office; and George Palivos's travel agent to corroborate evidence that George was out of the country in November. He faults his counsel for failing to follow up on a number of ideas Palivos had concerning his defense, such as to inquire of other attorneys representing defendants in the case and George Palivos's first attorney about whether they possessed the fabricated notes before November 14, witnesses who could have established that Palivos was not at a meeting with Black on November 15, and witnesses who would have reported that Black told them that Palivos had done nothing wrong but Black had acceded to pressure to implicate him and falsely did so to gain advantage for himself. Counsel also failed to offer evidence that Palivos was not a shareholder of JACPG, Inc. He also faults his lawyer for failure to present evidence that the prosecution was politically motivated.

As indicated in the discussion of the motion to disqualify, Palivos' theory about the government's failure to make required disclosures relies solely on the bare statements of a

---

[5]On cross-examination of Black, Palivos's counsel thoroughly explored this inconsistency in Black's testimony about meetings with George Palivos on the basis that he had been in Greece at the time. Black did not dispute it.

fugitive co-defendant made more than four years after the November 7, 2000 meeting he claims to have had with Black. The presentation is without substance. Moreover, according to Bouzanis's statement given to Agent Heinzer less than a year after he left the country, Bouzanis did not mention a meeting with Black where he was given a file. Rather, he stated he had lately had little contact with anyone associated with The Waterfalls. "However, prior to leaving the U.S., Bouzanis ran into Nick Black at a casino by coincidence. At the casino, Black told Bouzanis he need not worry about the Waterfalls situation."[6] Ex.15 to Palivos 2255 Memorandum at 21. Although Bouzanis apparently claims his proffer contained falsities, he does not specify the falsities or repudiate the entire document. Even if by discovering some evidence that a meeting between Bouzanis and Black occurred on November 7 Bouzanis could never have been called to impeach Black as to what occurred during that meeting, a circumstance casting considerable doubt on the potential materiality of such evidence.

With respect to Palivos's ineffective assistance claim, he is free to gather, and indeed has gathered, statements from witnesses he believes would exonerate him. He has not stated that anyone has refused a request for documentation of his allegations. His call for witnesses who would profess Palivos's innocence–unless Black wishes to repudiate his entire presentation about Palivos–would be calling for inadmissible vouching for the innocence of the defendant or repeating that Black vouched for it.

Wide-ranging post-conviction civil discovery by way of deposition and document production would provide Palivos greater access to these witnesses and their files than he would

---

[6]This 24-page proffer, by the way, makes numerous statements about Palivos's involvement with the fraudulent sale transaction.

have had pretrial under Federal Rule of Criminal Procedure 16. He has cited no authority for it, and the court knows of none. The court will not permit discovery regarding these matters, for there is simply no credible basis to conclude that Palivos has rebutted the presumption that public officials have properly discharged their official duties. *See Bracy*, 520 U.S. at 909. With respect to evidence that Palivos was targeted because he is a Democrat, he has no evidence other than his own submissions to a Congressional committee that did not warrant any comment in the Committee's findings.

Palivos's presentation is quite in contrast to the situation in *Bracy*, where a capital habeas petitioner contended that his trial judge, who was later convicted of taking bribes in other cases that were tried during the same time period, was motivated to convict him so as to deflect suspicion from the other cases. The petitioner sought discovery primarily of materials the prosecution had used against the judge,[7] "with the aim of establishing a pattern of corruption that affected [the judge]'s conduct, in not only those cases in which he had accepted a bribe but also those in which he had not." *Id*. at 696-97. The requested discovery was based on the sure foundation of the convicted judge and the contemporaneous timing, and it focused on the issue to be proved. Palivos, by contrast, has failed to present evidence that the government falsely accused Palivos in retaliation for his refusal to provide false testimony against former Governor George Ryan[8]; failed to discredit Black's testimony about the fabricated notes; failed to present

---

[7]The defendant requested to view the sealed transcript of the judge's trial, reasonable access to the prosecution's materials in the judge's case, to take depositions of certain lawyers associated with the judge, and a chance to search the judge's rulings (which the government had assembled) for a pattern of pro-prosecution bias.

[8]If the allegation that the government sought Palivos's cooperation in the prosecution of Governor George Ryan is true, Palivos lays no foundation for his belief that he was indicted for

12

testimony of witnesses who would have testified that Palivos was innocent of wrongdoing; failed to discredit Black with the timing of his cooperation; and failed to present evidence that Black was responsible for any misconduct in the fraudulent transaction.

Suffice it to say, Palivos has no basis for his request other than his belief that he might uncover something that might have been useful in impeaching Black at trial. This sweeping discovery on a 2255 motion would be unprecedented. Should the court, after consideration of the 2255 motion conclude, however, that particular discovery is necessary in order for Palivos to establish his claims, the court will so indicate by order. The motion for discovery is denied without prejudice as indicated in the preceding sentence.

C.  **Palivos's Motion to Amend**

Palivos made a motion to amend his 2255 motion in order to revise a statement of an attorney, William Von Hoene, who had represented Palivos at one time. The court initially granted leave to amend without a hearing but after receiving objections from the government vacated the order and took the motion under advisement. The court has now considered the motion, the response and reply and concludes that, although the amendments to the petition go somewhat beyond representations about Mr. Von Hoene, the court discerns no additional claims but only revisions to the supporting argument. It does not impute bad faith to Palivos's counsel for making corrections to earlier statements. For these reasons, the motion to amend is granted.

---

refusing to do so. Who specifically asked him to cooperate? Who specifically asked him to testify falsely? Where? When? What precisely was said? One must assume that Palivos was privy to any such conversation.

**D.    Government's Motion For Order Finding the Attorney-Client Privilege Waived, or to Strike the 2255 Motion**

The government asserts that it is entitled to speak with Thomas Breen with respect to Palivos's ineffective assistance claim and without Palivos present. In response, Palivos represents that he objected only to the government's contacting Mr. Breen while his motion to disqualify remained pending. That aside now, he continues to object to any conversation with Breen outside Palivos's presence but is eager to have Breen deposed.

The government has cited several cases holding that where a defendant puts ineffective assistance at issue, the attorney-client privilege is waived to the extent the conversations bear on counsel's strategic decisions. *E.g.*, *Bittaker* v. *Woodford*, 331 F.3d 715 (9th Cir. 2003) (privilege waived to the extent necessary for opposing party to litigate the ineffective assistance claim); *Tasby* v. *United States*, 504 F.2d 332, 336 (8th Cir. 1974) ("[P]rivilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence."). Moreover, the government has cited one well-considered case holding that the court has no authority to prevent each party from interviewing witnesses without the presence or consent of opposing counsel and without a transcript being made." *Wharton* v. *Calderon*, 127 F.3d 1201 (9th Cir. 1997). Palivos has not cited authority to the contrary and seems primarily to rest his position on his motion for discovery. Inasmuch as that motion has been denied, the court grants the motion to find the attorney-client privilege waived as to conversations between Breen and Palivos insofar as those communications are necessary to litigation of the ineffective assistance claim. If Palivos does not waive the privilege, then his ineffective assistance claim will be deemed withdrawn. Palivos combined his response to the government's motion with a renewed

14

motion to disqualify and to take discovery. The court has considered the motion and denies it.

**ORDER**

Palivos's motion to disqualify Assistant United States Attorneys Marsha McClellan and William Hogan (16) is denied. Palivos's motion for discovery (18) is denied. Palivos's motion to amend (38) is granted. Government's motion for entry of an order finding the attorney-client privilege waived (32) is granted; its alternative motion to strike (32) is denied without prejudice. Palivos's renewed motion to disqualify and for leave to take discovery (34) is denied. The government's response to the 2255 motion (54), which was stricken (62), is reinstated. Palivos may file a reply by August 30, 2010.[9] The reply memorandum should make clear Palivos's position with respect to the attorney-client privilege *vis a vis* Mr. Breen.

Enter:

Dated: August 12, 2010

_____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[9] The parties should be aware that a courtesy copy of pages of trial transcript that are cited in the briefs must be provided to the court.